984 F.2d 182
 Fed. Sec. L. Rep. P 97,380, RICO Bus.Disp.Guide 8261
 Richard F. KAUFMAN, Individually and as a Trustee of the
Amstore Corporation Administrative Pension Plan; Sylvia C.
Kaufman; Michael Kaufman; Robert Kaufman; Greg Kaufman;
Andrew Kaufman; Bear Lake Partners; and The Kaufman
Foundation Trust, Plaintiffs-Appellants,
v.
BDO SEIDMAN and David Fles, Defendants-Appellees.
 No. 92-1229.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 10, 1992.
Decided Jan. 26, 1993.
 
 Grant J. Gruel, Thomas Richard Behm (briefed), Gruel, Mills, Nims & Plyman, Grand Rapids, MI, Bradley C. Twedt (argued), Neal, Gerber & Eisenberg, Chicago, IL, for plaintiffs-appellants.
 Gordon J. Quist (briefed), Jon R. Muth, Edward R. Post, Daniel P. Perk, Brent D. Rector (argued), Miller, Johnson, Snell & Cumminskey, Grand Rapids, MI, for defendants-appellees.
 Before: MERRITT, Chief Judge, and MARTIN and MILBURN, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 The plaintiffs brought two actions against the same defendant investment counsellors arising from the same investment losses, the first action in state court for malpractice, misrepresentation and breach of contract, the second in federal court for securities fraud[1], RICO[2] and breach of fiduciary duty.[3] The state court jury found that defendants' professional misconduct in giving investment advice, including the concealment of certain facts, was not the proximate cause of plaintiffs' losses. The primary question on appeal is whether the District Court correctly held that the state jury finding for defendants on proximate cause collaterally estops relitigation of the causation issue in the federal securities case in which the federal courts have exclusive jurisdiction. 787 F.Supp. 125.
 
 
 2
 Plaintiffs Richard and Sylvia Kaufman and their relatives asked Mr. Kaufman's accountant, David Fles, a partner of defendant BDO Seidman, to recommend an investment counsellor. Mr. Fles recommended himself, allegedly telling the Kaufmans that he was an experienced investment advisor. Over the next two to three years plaintiffs invested over $4 million with defendant. None of the ventures proved profitable, although some yielded significant tax advantages. The plaintiffs brought the two actions to recover for these losses.
 
 
 3
 The rules of claim preclusion (res judicata) and issue preclusion (collateral estoppel) applied to state and federal court judgments are somewhat complex. Under well-settled federal law, when state-federal jurisdiction is concurrent on the federal claim, the law of the state in which an earlier judgment is rendered governs its preclusive effect on factual issues raised in a subsequent federal action.[4] This principle also ordinarily governs issue preclusion on fact issues, but not claim preclusion, in cases in which federal courts have exclusive jurisdiction, although close, individualized, careful analysis of the factual issue said to be common is required in each case.[5]
 
 
 4
 Under Michigan law, collateral estoppel prevents "relitigation of an issue in a subsequent, different cause of action where the prior proceeding culminated in a valid final judgment and the issue was (1) actually litigated and (2) necessarily determined." People v. Gates, 434 Mich. 146, 154, 452 N.W.2d 627, 630 (1990). Causation was "actually litigated" and "necessarily decided" in the Michigan court because it was the very issue upon which the jury found for defendant. The question then is whether the causation issue litigated there is the same causation issue presented here. "Essentially, in order for collateral estoppel to apply, the same ultimate issue of the first action must be involved in the second action." Schlumm v. Terrence J. O'Hagan, 173 Mich.App. 345, 354, 433 N.W.2d 839, 844 (1988).
 
 
 5
 Although the state case was based on a theory of professional misconduct and the federal case on a theory of securities fraud, plaintiffs' complaint and arguments to the jury in the state case claimed the same acts and the same resulting harm as in the instant case. There is no difference at all between the two actions in the wrongful acts claimed and the harm which is supposed to have resulted from these wrongful acts. Both the detailed description of the wrongful acts in the final argument to the jury in the state case, and the federal complaint for securities violations, claim that Mr. Fles and his firm are liable for the following acts and omissions: Mr. Fles told plaintiffs that he was an experienced investment advisor when he was not; he led them to believe that he had fully investigated each investment when he had not; he led them to believe that he had invested their funds only in instruments which were appropriate given their stated objectives when in fact he had concentrated their money in risky tax shelters; he failed to inform plaintiffs that he was violating firm policy by offering them investment and accounting advice concurrently; and he failed to inform them of other conflicts of interest. The harm that plaintiffs allegedly suffered in both cases was the loss of most of their $4 million investment. The jury found that this loss was not caused by the alleged misconduct. In light of the jury's concurrent finding that defendants were guilty of some misconduct, one can only conclude that the jury accepted the defense explanation that the losses resulted from the change in the value of real estate and other tax shelters after passage of the Tax Reform Act of 1986 and the almost simultaneous decline in oil prices rather than from defendants' misconduct.
 
 
 6
 Collateral estoppel should bar relitigation of the securities fraud causation issue of fact unless the causation element can be satisfied in the federal case by a different or less demanding burden than the causal element found lacking by the Michigan jury. Plaintiffs argue that the standard of proximate cause which was required in the malpractice case and on which the jury was instructed is different.
 
 
 7
 The Michigan jury was instructed that proximate cause meant that the defendants' "conduct must have been the cause of the plaintiffs injury, and second, that the plaintiff's injury must have been a natural and probable result." Tr. at 1233. This instruction does not create a more demanding requirement of causation than the requirement in federal securities actions that the plaintiff's loss be caused by the defendant's wrongful conduct. The jury in the state court action had to decide whether it was the personal shortcomings and the information that the defendants concealed or industry-wide conditions beyond defendants' control that caused the plaintiffs' loss. In reaching its verdict of no causation, the jury must have decided that the condition of the market caused the loss, not the defendants' wrongful conduct. The defendants did not represent, and securities law does not presume, that tax shelter investments in real estate, cattle, oil and gas and similar properties are risk free. On the causation issue in this securities case the jury would have to answer essentially the same type of question as in the earlier case: Was the change in the market the cause of the loss or the wrongful conduct? Because the wrongful conduct proved in the state case in all material respects is the same as the conduct plaintiffs allege here and because the test of causation is essentially the same, the jury verdict on the cause of the loss in the state case precludes relitigation of this issue in the federal case.
 
 
 8
 The RICO claim presented by the defendants is subject to the same issue preclusion bar. The civil remedy for RICO under 18 U.S.C. § 1964(c) provides that, "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate district court." Id. (emphasis added). The "by reason of" language imposes a causation requirement for recovery of damages. Sedina, S.P.R.L. v. IMREX Co., Inc., 473 U.S. 479, 496-97, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). This causation issue is sufficiently similar to that which was litigated in plaintiffs' state claim to justify application of issue preclusion. As the Seventh Circuit noted, "[c]ivil RICO is a statutory tort, so causation principles that generally apply in tort cases apply in civil RICO cases." Reynolds v. East Dyer Development Co., 882 F.2d 1249, 1253 (7th Cir.1989).
 
 
 9
 Both of plaintiffs' claims are barred by the preclusive effects of the Michigan jury's decision on the causation issue. Therefore, we need not reach the issue of claim preclusion with respect to either claim.
 
 
 10
 Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 Plaintiffs allege violations of §§ 20(a) and 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. 15 U.S.C. §§ 78t and 78j
 
 
 [2]
 Racketeer Influenced and Corrupt Organizations Act of 1970; Plaintiffs allege a violation of 18 U.S.C. § 1962(c). The predicate offenses for the RICO claim are telephone conversations (wire fraud) allegedly constituting "racketeering activity" within the meaning of 18 U.S.C. § 1961(1)
 
 
 [3]
 The district court's dismissal of this claim was not challenged by plaintiffs on appeal
 
 
 [4]
 Under 28 U.S.C. § 1738, state judgments "have the same full faith and credit" in federal court as "they have by law or usage in the courts of such state." In Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 83-84, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984), the Court held in the subsequent § 1983 action that there is no "distinction between the issue preclusion and claim preclusive effects of state court judgments."
 
 
 [5]
 Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), holds that § 1738 does not require claim preclusion in exclusive federal jurisdiction cases but states that in such cases the doctrine of issue preclusion based on state law continues to apply. Courts should be careful in applying issue preclusion in cases involving exclusive federal jurisdiction, to insure that relitigation is precluded only when the issues are truly identical. See generally, 18 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 4470 (West 1981 & Supp.1992). Compare Murphy v. Gallagher, 761 F.2d 878 (2nd Cir.1985) (issue preclusion barred a subsequent claim under the securities laws) with Cantor v. Multiple Listing Serv., 568 F.Supp. 424 (D.C.N.Y.1983) (State court finding that alleged antitrust activity was purely intrastate did not bar subsequent federal action under the Sherman Anti-Trust Act). See also Granader v. Public Bank, 417 F.2d 75 (6th Cir.1969), holding that findings of fact in a state court receivership action precluded similar factual issues in a subsequent Sherman Act case in which federal jurisdiction is exclusive